RECEIVED

MAR - 7 2011

TONY R. MOORE, CLERK
BY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| SUNNY Z. HUSSAIN | CIVIL ACTION NO: 10-0711 |
| VERSUS | JUDGE DONALD E. WALTER |
| GREGORY S. GARSON | MAGISTRATE JUDGE HORNSBY |

## ORDER

Before the Court is a Motion to Dismiss, or in the Alternative, Motion to Stay Litigation Pending Arbitration [Doc. #4] filed by the Defendant, Gregory S. Garson ("Garson"). Defendant requests that the Court dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or in the alternative, stay the proceedings pursuant to Section 3 of the Federal Arbitration Act. Plaintiff, Sunny Z. Hussain ("Hussain"), opposes this motion. [Doc. #8]. For the reasons stated herein, Defendant's Motion in the Alternative is **GRANTED**. This matter is **STAYED** pending arbitration.

## BACKGROUND FACTS

Hussain filed suit against Garson, his former investment broker, alleging various acts of misconduct based upon Garson's advice, recommendations, and omissions pertaining to stock issued by Performance Health Technologies, Inc. ("PHT"). [Doc. #1]. Garson denies these allegations and requests that the Court either dismiss the case without prejudice, or in the alternative, stay all further proceedings pending arbitration. [Doc. #4].

Hussain alleges that Garson acted in concert with an individual named Kenneth Gordon ("Gordon") in a "pump and dump" stock investment fraud scheme. Specifically, Hussain alleges that he was approached by Gordon who suggested that he invest heavily in PHT stock. Hussain's

first interactions with Garson occurred in June 2008, at which point Garson agreed to act as Hussain's investment broker.  [Doc. #8 at 2].  Gordon and Garson allegedly advised Hussain that PHT stock would soon become publicly traded and that the value of the stock would increase dramatically from $1.00 per share to $4.00 or $5.00 per share. [Doc. #1].  Hussain alleges that Garson urged him to liquidate his investments and retirement funds and even borrow money to invest as heavily as possible in PHT. [Doc. #1].  Hussain states that upon Garson's advice he invested a total of $150,000.00 in what he believed to be 200,000 shares of PHT at an adjusted price of $0.75 per share.  [Doc. #1].  The Complaint reflects that Hussain purchased the shares during July 2008. At this time Garson was employed by Dawson James Securities and was registered with the Financial Industry Regulatory Authority ("FINRA").  [Doc.. #8 at 1].

In November 2009, Hussain became aware of "a number of other stock fraud victims of the defendants". [Doc. #1].  Hussain learned that PHT is not and has never attempted to become a publicly traded company. [Doc. #1].  Rather, PHT is a privately held company with stock currently valued at approximately $0.25 per share. [Doc. #1].  Shortly thereafter, Hussain filed this lawsuit.

Attached to Garson's motion are two "account applications" for Dawson James Securities completed by Hussain on July 12, 2008, which designate Garson as Hussain's account executive. At the top of both applications in large handwritten print are the words "see back", referring to the terms of the "customer agreement" found on the back of the applications. [Doc. #4; Ex. A and B].

The customer agreement is identical in each application and contains the following clause in bold font and all caps:

> PRE-DISPUTE ARBITRATION AGREEMENT – THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS: [...] ALL

CONTROVERSIES THAT MAY ARISE BETWEEN US (INCLUDING, BUT NOT LIMITED TO, CONTROVERSIES CONCERNING ANY ACCOUNT, ORDER OR TRANSACTION, OR THE CONTINUATION, PERFORMANCE, INTERPRETATION OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO OR ARISING BEFORE, ON OR AFTER THE DATE THIS ACCOUNT IS OPENED) SHALL BE DETERMINED BY ARBITRATION IN ACCORDANCE WITH THE RULES THEN PREVAILING OF THE NEW YORK STOCK EXCHANGE, INC., OR THE NASD, INC., AS I MAY DESIGNATE. IF I DO NOT NOTIFY YOU IN WRITING OF MY DESIGNATION WITHIN FIVE (5) DAYS AFTER I RECEIVE FROM YOU A WRITTEN DEMAND FOR ARBITRATION, THEN I AUTHORIZE YOU TO MAKE SUCH DETERMINATION ON MY BEHALF. I UNDERSTAND THAT JUDGMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT OF COMPETENT JURISDICTION.

[Doc. #4, Exs. A and B].

This arbitration clause is contained in both account applications signed by Hussain. The clause is very broad, and specifically includes controversies arising before, on, or after the date the accounts with Dawson James Securities were opened - July 12, 2008. *Id.*

Garson was employed by Dawson James Securities before Hussain initially contacted him, and remained an employee through February 6, 2010, at which point the employment relationship was terminated. Hussain states that Garson's FINRA license was canceled as of February 2010. [Doc. #8 at 16]. Even if the Court accepts this statement as true for the purposes of this motion, the eventual cancellation Garson's FINRA license is of no consequence to the analysis of this motion because Garson was a licensed broker affiliated with Dawson James Securities when the alleged acts of wrongdoing took place and when the arbitration agreements were signed.

## LAW AND ANALYSIS

The Federal Arbitration Act governs the arbitrability of claims brought in federal court, which states in relevant part:

3

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, .... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract [or] transaction..... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Federal case law reflects that there is a strong national policy in favor of arbitration, including a requirement by the Supreme Court that courts "rigorously enforce agreements to arbitrate." *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  District courts are required under the Act to "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Whether a party may be compelled to arbitrate is determined by a two-step analysis. *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381 (5th Cir. 2008).  First, the Court must determine "if the party has agreed to arbitrate the dispute." If they have, the Court must then ask whether "any federal statute or policy renders the claims nonarbitrable." *Id.* (citations omitted).  The parties to this case do not argue that a federal statute or policy bars arbitration.

Whether the parties agreed to arbitrate the dispute involves two inquiries: (1) is there a valid agreement to arbitrate the claims, and (2) does the dispute in question fall within the scope of the arbitration agreement. *Id.* (citation omitted).  A determination of whether there is a valid agreement to arbitrate is based on ordinary contract principles. *Hill v. GE Power Systems, Inc.*, 282 F.3d 343, 347 (5th Cir. 2002).

The crux of Hussain's Complaint is that Garson fraudulently induced him into investing in an "pump and dump" penny stock.  However, this claim does not affect the validity of the arbitration

4

clause itself. Even if the investment contract was in fact induced by fraud the arbitration clause is enforceable unless Hussain was fraudulently induced into signing the arbitration clause itself. *Downer v. Siegel*, 489 F.3d 623, 627 (5th Cir. 2007).

Hussain does not argue that he was fraudulently induced into signing the arbitration clause. Rather, Hussain states that the clause should not apply to the PHT stock purchases because they were not made through his Dawson James Securities account. [Doc. #8 at 4]. The Fifth Circuit addressed a similar argument in *Downer v. Siegel*, where plaintiffs claimed that they engaged in private investments with their stock broker, and therefore should not be subject to the arbitration agreement signed with the investment firm. *Id.* at 626. The Fifth Circuit determined that the broad language of the arbitration clause did not limit its circumstances to those that fall only within the employee's employment, but covered all controversies between the plaintiffs and former or current employees of the brokerage firm and concerning any account maintained by the firm. *Id.* Importantly, the decision noted that the plaintiffs could not maintain their underlying action without discussing the asset management agreement and why the broker was in charge of their money. *Id.* at 627.

Given the extremely broad language of the arbitration clause in this matter, the Court concludes that the arbitration agreement is valid and is applicable to Defendant Garson. The account agreements state that the arbitration clause is applicable to "all controversies that may arise between us (including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between us, *whether entered into or arising before, on or after the date this account is opened.*" [Doc. #4, Ex. A and B (emphasis added)]. Further, Hussain's argument that the arbitration clause should not apply

5

to Garson individually is unconvincing.  The Dawson James Securities account applications clearly state that Garson is the account executive assigned to Hussain, and that Hussain was referred to Dawson James Securities by "K. Gordon" - the individual who allegedly worked in concert with Garson to defraud Hussain. *Id.*  The Court can see feasible explanation for why Hussain signed the applications other than to facilitate the PHT stock purchases.

The next step in determining whether the Court may compel arbitration is to see whether the dispute in question falls within the scope of the arbitration agreement.   A presumption of arbitrability exists such that the Court must decide "in favor of arbitration when the scope of an arbitration clause is fairly debatable or reasonably in doubt." *Downer v. Siegel*, 489 F.3d at 626. "The weight of this presumption is heavy: arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the dispute at issue." *Id.* (internal citations and quotations omitted).

Hussain makes the following claims against Garson: (1) negligence, (2) breach of trust and fiduciary duties, (3) misrepresentation, (4) fraud, (5) unjust enrichment, (6) breach of contract, (7) civil conspiracy to damage plaintiff, (8) violations of the Louisiana Securities Act, (9) violations of the Florida Securities and Investor Protection Act, and (10) violation of the Securities Act of 1934. [Doc. #1].   Taking the presumption of arbitrability into consideration, this Court finds that all of Hussain's claims relate to Garson's use of his credential as an investment advisor to be the "front-man" for the alleged scheme, and, therefore, all of the claims are reasonably within the scope of the broadly defined arbitration agreement.

## CONCLUSION

6

Based on the foregoing reasons, Defendant's Motion to Dismiss, or in the Alternative, Motion to Stay Litigation Pending Arbitration [Doc. #4] is hereby **GRANTED**.  This matter is **STAYED** pending arbitration according to the terms of the agreement.

**THUS DONE AND SIGNED**, this _____7_____ day of March, 2011.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

7